NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

ALETHEA LUCKEY,

                    Plaintiff,                       CIVIL NO. 04-3847 (GEB)

    v.

COUNTY OF ESSEX OF THE STATE
OF NEW JERSEY, et al.,                    **MEMORANDUM OPINION**

                  Defendants.

**BROWN, Chief District Judge**

This matter comes before the Court upon: (1) Defendant Dr. Nidal Matalkah's (hereinafter "Defendant Matalkah") Motion for Summary Judgment on the medical malpractice cause of action; (2) Defendants Correctional Health Services, Inc., Lisa Smith, R.N., Pamela Anderson, N.P., Dr. Nidal Matalkah and Dr. Syed Rizvi (hereinafter "medical Defendants") Motion for Summary Judgment; and (3) Defendants County of Essex, Joseph N. Divincenzo, Cleophas Simpson, Keith M. Ali, Joseph Martin, Scott A. Faunce, John and Jane Doe Correctional Officers, Officer Reed, Officer King and Officer Flores (hereinafter "county Defendants") pursuant to Federal Rule of Civil Procedure 56 [Docket Entry ##'s 46, 55 and 57]. The action was reassigned to the undersigned on October 20, 2006, and the Court, having read and fully considered all of the parties' submissions, has decided this matter without oral argument pursuant to Fed.R.Civ.P. 78.  For the reasons discussed below, all pending summary judgment motions are denied.

## I.      BACKGROUND

This civil action has been brought by Aletha Luckey, as the administratrix and the

administratrix ad prosequendum of the Estate of Henry Sipp, Jr., for herself individually and all next of kin (hereinafter "Plaintiff").[1]  Plaintiff's original Complaint was filed on August 12, 2004.  On March 17, 2005, Plaintiff filed an Amended Complaint and on July 7, 2005, Plaintiff filed a ten-count Second Amended Complaint.[2]  Count One alleges 42 U.S.C. § 1983 against Defendants; Count Three alleges common law negligence against Defendants; Count Five alleges wrongful death against Defendants; Count Seven alleges medical malpractice against Defendants "Healthcare Providers Newark", Essex County and Correctional Health Services, Inc.; and Count Nine alleges conspiracy to hide cause of death against Defendants.

On August 25, 2003, at approximately 9:00 p.m., decedent Henry Sipp, Jr. was arrested and taken into custody.  (Compl., ¶ 27).  He was thereafter transported to the Essex County Jail in Newark, New Jersey.  (Id.).  Mr. Sipp remained at the Essex County Jail until his death on August 27, 2003.  (Id.).  Mr. Sipp was a diabetic at the time of his arrest and incarceration.  (Id. at ¶ 28).

## II.   STANDARD OF REVIEW

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Orson, Inc. v. Miramax Film Corp.,* 79 F.3d 1358, 1366 (3d Cir. 1996); *Healy v. New York Like Ins. Co.*, 860 F.2d 1209, 1219, n.3 (3d Cir. 1988), *cert. denied*, 490 U.S. 1098 (1989); *Hersh v. Allen Prod. Co.*, 789 F.2d

---

[1]  Originally, there was an additional Plaintiff, Tamike R. Barber, administratrix of the estate of Mary K. Barber.  That Plaintiff has since reached a settlement with Defendants and is no longer a litigant in this action.

[2]  Counts Two, Four, Six, Eight and Ten are applicable only to now terminated Plaintiff Tamike R. Barber and as such, those counts are moot.

230, 232 (3d Cir. 1986).  The threshold inquiry is whether there are "any genuine factual issues

that properly can be resolved only by a finder of fact because they may reasonably be resolved in

favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no

issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to

return a verdict in its favor).  In deciding whether triable issues of fact exist, the Court must view

the underlying facts and draw all reasonable inferences in favor of the non-moving party.  *See*

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pennsylvania*

*Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

Rule 56(e) of the Federal Rules of Civil Procedure provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this
> rule, an adverse party may not rest upon the mere allegations or denials of the
> adverse party's pleading, but the adverse party's response, by affidavits or as
> otherwise provided in this rule, must set forth specific facts showing that there is a
> genuine issue for trial.  If the adverse party does not so respond, summary
> judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).  The rule does not increase or decrease a party's ultimate burden of proof

on a claim.  Rather, "the determination of whether a given factual dispute requires submission to

a jury must be guided by the substantive evidentiary standards that apply to the case."  *Anderson*,

477 U.S. at 255-56.

Under the rule, a movant must be awarded summary judgment on all properly supported

issues identified in its motion, except those for which the non-moving party has provided

evidence to show that a question of material fact remains.  *See Celotex*, 477 U.S. at 324.  Put

another way, once the moving party has properly supported its showing of no triable issue of fact

and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be

"supplemented . . . by depositions, answers to interrogatories, or further affidavits," id., "its

-3-

opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, n.12; *see also Anderson*, 477 U.S. at 247-48 ("[B]y its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion . . . the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original).

What the non-moving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; *see also Lujan v. National Wildlife Fed.*, 497 U.S. 871, 888 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit."); *Anderson*, 477 U.S. at 249; *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ("To raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant" but rather must exceed the 'mere scintilla' threshold.), *cert. denied*, 507 U.S. 912 (1993).

## III.   DISCUSSION

### A.   Summary Judgment Regarding Medical Malpractice Cause of Action Against Defendant Dr. Nidal Matalkah

Defendant Matalkah seeks summary judgment regarding the medical malpractice cause of action lodged against him (Count Seven of the Second Amended Complaint). In support of his motion, Defendant Matalkah asserts that he was the Medical Director at the Essex County Jail when decedent Sipp was admitted as an inmate, and that he was not directly involved in the medical care of any inmate, including decedent Sipp. As such, Defendant Matalkah contends that he cannot be liable under medical malpractice for Sipp's death.

-4-

In opposition, Plaintiff argues that although Defendant Matalkah did maintain a supervisory role of medical care provided to prisoners by Defendant Correctional Health Services, he is nevertheless liable because he had direct oversight and control over the medical staff that treated decedent Sipp.  Plaintiff further argues that as Medical Director of the Essex County Jails, Defendant Matalkah was the creator of the Correctional Health Services Program for the Jail and Jail Annex Policy and Procedure Manual (hereinafter "Policy Manual") which regulated medical care at the Essex County Jails.  Further, Defendant Matalkah was to ensure that the medical personnel were following the policies and procedures the Policy Manual set forth.  Ultimately, Plaintiff argues, Defendant Matalkah had "ultimate responsibility and authority . . . over the medical needs of the inmates" in the Essex County Jails.  (Plt. Opp., p. 5; Taylor Dec., Exh. 14, p. 40).

As Defendant Matalkah's job description and role has been clearly defined and essentially agreed upon by the parties, the Court finds that there is no genuine issue of material fact.  The question before the Court now is whether, as a matter of law, a non-treating supervisory physician can be held liable for medical malpractice.

Today, New Jersey medical malpractice law is governed by state statute.  N.J.S.A. 2A:53A-37 et seq., cited as the "New Jersey Medical Care Access and Responsibility and Patients First Act" was enacted on June 7, 2004.  The act became effective thirty days thereafter, pursuant to the statute.  The statutes goal was to protect patients and lower medical malpractice liability insurance for practicing physicians in the state.  N.J.S.A. 2A:53A-40, entitled "Affidavit of noninvolvement" which is of particular relevance to the issue at bar, provides as follows:

(a) A health care provider named as a defendant in a medical malpractice action may cause the action against that provider to be dismissed upon the filing of an affidavit of noninvolvement with the court. The affidavit of noninvolvement shall set forth, with particularity, the facts that demonstrate that the provider was misidentified or otherwise not involved, individually or through its servants or employees, in the care and treatment of the claimant, and was not obligated, either individually or through its servants or employees, to provide for the care and treatment of the claimant, and could not have caused the alleged malpractice, either individually or through its servants or employees, in any way.

Here, the New Jersey legislature made available the potential for a defendant in a medical malpractice action who was not directly involved in the care or treatment of a patient to demonstrate his or her noninvolvement, which if found to be accurate, could exonerate said defendant from any liability. However, this statute did not become effective until July 7, 2004, almost one year after Sipp's death.[3] As such, the Court must consider what the law of medical malpractice was prior to the statutes enactment.

Although Defendant disagrees, the Court finds the case of Tobia v. Cooper Hospital University Medical Center, 136 N.J. 335, 339, 643 A.2d 1 (1994) to be persuasive authority in this regard. In Tobia, the New Jersey Supreme Court found that two doctors who were in charge of supervising medical students could be held liable for malpractice for their failure to "fulfill their supervisory duty . . ." Id. at 346. In so holding, the New Jersey Supreme Court stated as follows:

We reinstate the suits against [the supervisory doctors] without resurrecting the 'captain of the ship' doctrine that the [New Jersey] Appellate Division rejected in Sesselman v. Muhlenberg Hospital, 124 N.J.Super. 285, 290, 306 A.2d 474 (1973). We are not allowing liability to be imposed on the doctors merely because they were attending physicians on duty at the time of plaintiff's injury,

___

[3] Defendant concedes this point, stating that the statute "was NOT effective until July 7, 2004 (30 days after the enactment date of June 7, 2004), and therefore, was NOT effective at the time of the alleged malpractice allegations against Dr. Matlakah in August 2003 . . ." (Def. Motion, p. 3-4) (emphasis in the original).

-6-

> but rather because the jury could find they had specific duties to train and
> supervise the other employees on duty.

Id.

In the case at bar, a jury could so find as well.  There is every indication that Defendant

Matalkah, as Medical Director for the Essex County Jail and creator of the policies by which

medical staff were to operate, was directly responsible for the manner and method of care his

medical staff provided to prisoners.  Further, a jury could find that Sipp's death was the result of

a failure by medical staff to follow the policies Defendant Matalkah himself was responsible for

creating and enforcing, thus placing him a position of vicarious liability.[4]

Although Defendant Matalkah is correct when he states that the intent of the New Jersey

legislature currently is to insulate supervisory medical personnel from civil liability, that was not

the legislature's intent at the time of Sipp's death.

The Court therefore finds that the claims of medical malpractice against Defendant

Matalkah are appropriate under the law.  Defendant Matalkah's summary judgment motion

regarding medical malpractice liability is therefore denied.

## B.    Remaining Summary Judgment Motions by Medical and County Defendants

County and Medical Defendants have each filed their own summary judgment motions.

The Court finds that there are genuine questions of material fact present and that the parties are

not entitled to judgment as a matter of law.

---

[4] Indeed, medical malpractice is defined as negligence on the part of medical personnel. Specifically, to succeed in a medical malpractice suit, a plaintiff is required to show: (1) the applicable duty of care; (2) a deviation from this standard of care; (3) injury; and (4) proximate causation between the breach and the injury.  Jackson v. Fauver, 334 F. Supp.2d 697, 743 (D.N.J. 2004); Romano v. Brown, 2006 WL 2376913 (D.N.J. 2006).

Specifically, County Defendants assert that Plaintiff has failed to demonstrate deliberate indifference, scienter, or negligence on behalf of said Defendants.  Further, County Defendants assert that the claims against them should be dismissed because they entered an indemnification agreement with Medical Defendants.

Medical Defendants, in their summary judgment motion, assert that the medical treatment provided to decedent Sipp does not rise to deliberate indifference as to any actions they have taken.  Medical Defendants further assert that there are no grounds to support any claims of medical malpractice, wrongful death or conspiracy.

However, this case, both on its face and throughout the record, provides genuine issues of material fact that must be determined by the fact finder.  The issues presented by the parties include: (1) whether decedent Sipp was improperly diagnosed as suffering from heroin withdraw and whether that diagnosis, if so made, was reasonable under the circumstances; (2) whether decedent Sipp's diabetes was properly monitored by medical staff, i.e., blood and urine tests; (3) whether the glucometer, utilized to measure blood sugar levels, was properly calibrated by medical staff; (4) whether decedent Sipp was properly monitored once he was admitted to the "slop tank" adjacent to the infirmary; (5) whether decedent Sipp was evaluated by a doctor when he was first admitted to the "slop tank", or whether that doctor had actually left two hours prior and then entered his evaluation of Sipp after Sipp's death; (6) whether decedent Sipp was visible to medical and/or correctional staff when he was moved from the "slop tank" to the infirmary; (7) whether decedent Sipp was properly monitored once he was admitted to the infirmary; (8) whether there was a sufficient amount of medical and/or correctional staff available to tend to decedent Sipp's needs; (9) whether County Defendants were responsible for the actions of the

-8-

contracted Medical Defendants; and (10) whether County Defendants were responding appropriately to the prior issued Medical Consent Order issued because of alleged prior incidents of inadequate medical care at the Essex County Jail; whether County Defendants improperly and/or inadequately monitored Medical Defendants' performance. Each of these issues remain unanswered, and each are material questions of fact that must be considered and determined by a jury.

As previously referenced, these material issues are in actuality a natural byproduct of the main issue. Certainly, on its face, this case causes this Court, or any person, interested or disinterested, to ask how an individual placed under the care of the jail system, who had survived diabetes for four years prior to said placement, who was insulin dependent and who notified the appropriate individuals of this medical need, dies within 48 hours of arrest of diabetic ketoacidosis.

The Court therefore finds that significant questions of material fact exist which must be decided by a jury. County and Medical Defendants' motions for summary judgment are denied.[5]

---

[5] Further, the Court finds that questions of indemnification in this matter are also for the jury. Because the contract between Essex County and the Medical Defendants state that the County may be held harmless only for claims "arising out of the negligent or wrongful acts" of Medical Defendants, a finding by a jury as to whether negligent or wrongful acts occurred must first be determined before indemnification can be decided.

IV.    **CONCLUSION**

For the foregoing reasons, all pending motions for summary judgment by Defendants

[Docket Entry ##'s 46, 55 and 57] are denied.


s/Garrett E. Brown, Jr.
**HONORABLE GARRETT E. BROWN, JR**
**CHIEF UNITED STATES DISTRICT JUDGE**


Dated: December 19, 2006